**Freddy HATTEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00168–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Aug. 6, 2002.

Decided Sept. 20, 2002.

Vernard G. Solomon, Marshall, for appellant.

Al Davis, Assistant District Attorney, Marshall, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

1. The form reads as follows:

   Now comes the Defendant herein, in person and *WITHOUT* an attorney, and states that he understands the following:
   1. The Defendant has the right to remain silent and not make any statement at all and that any statement the Defendant makes may be used against him at his trial;

## OPINION

Opinion by Justice WILLIAM J. CORNELIUS (Assigned).

In a prior appeal, we reversed the trial court's judgment revoking Freddy Hatten's community supervision and remanded the cause, because we found that the trial court failed to adequately inform Hatten on the record of his right to counsel and the dangers of self-representation. The Texas Court of Criminal Appeals reversed our judgment because there is no requirement that the trial court admonish a defendant on the dangers and disadvantages of self-representation when the defendant does not contest his guilt in a misdemeanor case. Hatten pleaded true to the motion to revoke in this proceeding. *See Johnson v. State,* 614 S.W.2d 116 (Tex. Crim.App. [Panel Op.] 1981) (op. on reh'g). In its opinion reversing our judgment, the Court of Criminal Appeals said, "What remains to be decided, ... is whether the waiver of right to counsel was knowing, intelligent and voluntary. That is a separate issue apart from the entitlement to admonishments under *Faretta* [*v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)]." *Hatten v. State,* 71 S.W.3d 332, 334–35 (Tex.Crim.App.2002).

Before Hatten pleaded true to the motion to revoke, he signed a written form waiving certain rights, including his right to an attorney.[1]

2. Any statement the Defendant makes may be used as evidence against him in Court;
3. The Defendant has the right to have a lawyer present to advise him prior to and during any questioning;
4. If the Defendant is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
5. The Defendant has the right to have an attorney represent him in Court in connection with this case and if the De-

In addition to receiving and approving Hatten's waiver form, the trial court inquired into Hatten's knowing and intelligent waiver of his rights as well as his mental condition and his understanding of the proceedings.[2]

> fendant is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him in Court in connection with this case;
> 6. The Defendant after being advised of these rights freely, intelligently and voluntarily (*DOES*) give up his right to have an attorney to represent him;
> 7. The Defendant understands the nature of the allegations against him;
> 8. The Defendant understands the range of penalty for the offense charged against him;
> 9. The Defendant waives the reading of the State's Application to Proceed or Application to Revoke;
> 10. The Defendant represents to the Court that he desires to make immediate disposition of the case by here and now entering his plea of (*TRUE*) herein;
> 11. The Defendant hereby waives his right to confront the witnesses in this case and waives his right to present witnesses in his behalf;
> 12. *The Defendant hereby demands this case be submitted to the Court on all issues of law and fact.*

2. The colloquy between the court and Hatten was as follows:

> THE COURT: This is a hearing on the Application to Revoke Mr. Hatten's probation. I'm showing you a document called Explanation of Revocation Rights Application to Proceed. Did you sign this document?
> THE DEFENDANT: Yes, sir.
> THE COURT: At the time you signed this document, did you understand that by signing this document you were giving up your rights in this matter—to a hearing in this matter and saying that the allegations brought against you to revoke your probation are, in fact, true. Did you understand that?
> THE DEFENDANT: Yes.
> THE COURT: All right. Did you understand that by signing this document, it could result in me finding that the allegations brought against you are true and ordering that your probation be revoked and the original sentence of 365 days in jail and a $4,000 fine that were imposed first on you on September 16th, 1997 could be re-imposed on you today. Did you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. Are you thinking clearly?
> THE DEFENDANT: Yes.
> THE COURT: You just signed this a few minutes—within the last hour; right?
> THE DEFENDANT: Yes.
> THE COURT: Have you ever been treated for mental illness?
> THE DEFENDANT: Yes.
> THE COURT: When was the last time you were treated for mental illness?
> THE DEFENDANT: I [have] been treated for it and I take medication for it.
> THE COURT: You know what condition—what your condition is?
> THE DEFENDANT: Schizophrenia.
> THE COURT: Do you know where you are?
> THE DEFENDANT: Yeah.
> THE COURT: Where are you?
> THE DEFENDANT: I'm in jail, I guess; county jail.
> THE COURT: Where are you right now?
> THE DEFENDANT: In court.
> THE COURT: What court, do you know?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you know who I am?
> THE DEFENDANT: Yes, sir.
> THE COURT: Who am I?
> THE DEFENDANT: Judge Ammerman.
> THE COURT: And these guys, who are they? Do you know what their job is?
> THE DEFENDANT: Yes.
> THE COURT: They are district attorneys? Prosecutors.
> THE DEFENDANT: Yes, sir.
> THE COURT: Sir?
> THE DEFENDANT: Yes, sir.
> THE COURT: And you've got a probation officer in here somewhere?
> THE DEFENDANT: Ms. Epps.
> THE COURT: Do you understand what we are here today for? Ms. Epps is saying you broke your probation?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. You *appear to be* thinking pretty clearly to me.
> Mr. Hill and Mr. Phillips, did Mr. Hatten appear to be thinking clearly to you when you discussed this case?

In the past, there have been some differences of opinion among the courts of appeals as to when and under what circumstances it is necessary for the trial court to advise a defendant as to his right to counsel *and* admonish him on the record as to the dangers and disadvantages of self-representation. At least part of this uncertainty has now been removed. Since the decision in *Johnson v. State,* it is clear that, in misdemeanor cases where the defendant's guilt is not contested, the trial court is not required to admonish the defendant as to the dangers and disadvantages of self-representation, but must only see that the defendant voluntarily and intelligently waived his right to counsel. *Johnson v. State,* 614 S.W.2d 116; *Garcia v. State,* 909 S.W.2d 563 (Tex.App.-Corpus Christi 1995, pet. ref'd); *Barras v. State,* 902 S.W.2d 178 (Tex.App.-El Paso 1995, pet. ref'd); *Blocker v. State,* 889 S.W.2d 506 (Tex.App.-Houston [14th Dist.] 1994, no pet.); *State v. Finstad,* 866 S.W.2d 815 (Tex.App.Waco 1993, pet. ref'd); *Cooper v. State,* 854 S.W.2d 303 (Tex.App.-Austin 1993, no pet.).

Moreover, the teaching of *Johnson* and the above-cited courts of appeals cases, all of which are cited with approval by the Texas Court of Criminal Appeals in *Hatten v. State,* 71 S.W.3d 332, is that, if the defendant in a misdemeanor case where guilt is not contested signs a written waiver of counsel in court and there is no contradicting evidence or any evidence that the defendant was coerced or intimidated, the record is sufficient to support a finding that the defendant's waiver of counsel was valid. That is what occurred in this case. Hatten signed an extensive and thorough written waiver approved by the trial court. There was some testimony

[PROSECUTOR]: I discussed the paperwork and he gave me no indication for me to think that he wasn't thinking clearly and understanding what we were discussing.

about his knowing waiver of his rights, and in none of the evidence is there any hint that tends to contradict his written waiver. The trial court found that Hatten freely and voluntarily waived his right to counsel and to a jury trial and other rights. Paraphrasing the words of the Houston Court of Appeals in *Blocker v. State,* 889 S.W.2d at 508, we note that, if Hatten had second thoughts about proceeding without a lawyer, he was free to bring those concerns to the trial court's attention before the entry of his plea of true.

Because the record here supports the trial court's finding that Hatten voluntarily and intelligently waived his right to counsel, we affirm the trial court's judgment.

THE COURT: Okay. You appear to be thinking clearly today, Mr. Hatten, so I approve you giving up your rights in this matter and accept your plea of true.