COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-115-CR

 

 

EX PARTE

 

JAVIER GUTIERREZ

 

                                              ------------

 

         FROM COUNTY CRIMINAL
COURT NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction

Appellant Javier Gutierrez appeals from the trial
court=s order
denying relief on his application for writ of habeas corpus filed pursuant to
article 11.09 of the Texas Code of Criminal Procedure.[2]  We will affirm.

 








II.  Procedural Background

Gutierrez was indicted for the offense of driving
while intoxicated in Denton County on December 12, 1992.  The record contains three agreed motions for
continuance.  In the first motion for
continuance dated March 2, 1993, the parties agreed that the arraignment should
be continued until March 29, 1993.  That
motion contains a handwritten notation stating, A[T]enemos
translator en ese dia,@ which roughly translates, A[W]e
have a translator that day.@  On March 29, 1993, the parties agreed to a
continuance until April 13, 1993, and the motion for continuance states that
there was a plea based upon an agreed punishment recommendation from the
State.  On April 13, 1993, the parties
agreed to a third continuance, postponing further proceedings until June 7,
1993. 








On June 7, 1993Cthe date
that Gutierrez=s case was ultimately called to
trialCan
interpreter, whom the county paid for, rendered thirty minutes of service to
assist Gutierrez with the proceedings. 
On that same date, Gutierrez, acting pro se, signed waiversCwaiving
his right to be represented by counsel and his right to a jury trialCand
admonishments.  Gutierrez thereafter
pleaded no contest to the offense of misdemeanor driving while intoxicated on
December 12, 1992, and the trial court sentenced him to 120 days=
confinement in the county jail, probated for twenty-four months; suspended his
license for 365 days; and assessed a $100 fine and $90 in court costs.
Gutierrez did not appeal this conviction. 

On February 25, 2008, Gutierrez filed an
application for writ of habeas corpus, arguing that he is currently facing a
felony indictment in Tarrant County because his 1993 misdemeanor DWI conviction
is being used as an enhancement and that but for the use of the 1993
misdemeanor conviction as an enhancement, the current charge would be a
misdemeanor.  Specifically, Gutierrez argued
that his 1993 conviction is void because his plea was unlawfully induced or
involuntarily made and because his waiver of counsel was unknowingly or
unintelligently made and was therefore invalid. 


Gutierrez stated in an affidavit attached to his
application that he was born in Mexico and went to public school in
Mexico.  He explained that at the time of
his 1993 plea hearing, he did not understand English very well because Spanish
was spoken at his house and at his job. 
He stated that he did not know what he was signing and only signed the
documents because he was told that he would not go to jail.  He said that the interpreter that Denton
County provided on his court date confused him even more because the
interpreter=s Spanish was not very
good.  Gutierrez stated that if he had
understood that he was entitled to a lawyer and a jury trial, he would have
chosen both. 








Also attached to Gutierrez=s
application is an affidavit from Jacob Jacoby, who was the assistant criminal
district attorney who prosecuted Gutierrez=s 1992
DWI.  In the affidavit, Jacoby did not
indicate that he specifically recalled Gutierrez=s case
but said that generally the county court would call pro se defendants to the
bench, inquire of their employment status, and determine whether they were
going to hire counsel, seek an appointed attorney, or represent themselves pro
se.  The county court would indicate that
if the defendants did not want to hire an attorney, they could speak to the
State=s
attorney. 

Jacoby said that he did not have a formalized
strategy for dealing with pro se defendants and that when he first met pro se
defendants, he would tell them that he represented the State and that they did
not have to talk to him.  Jacoby told
them that he could not give advice. 
Jacoby went through the Miranda warnings, but he did not explain
them.  

Afterwards, the county court would tell pro se
defendants that they could still hire an attorney or have the court appoint one
if they could not afford to hire an attorney. 
Jacoby stated that the county court told the pro se defendants that the
court would hold them to the same standard as a licensed attorney, but the
court did not admonish the pro se defendants on the dangers of
self-representation. 








Jacoby explained that they had an informal manner
of obtaining and appointing interpreters and that Jonathan Fairbanks, a college
student who was neither licensed nor certified, was appointed in this case. 

In response, the State attached an affidavit from
the Honorable Don Windle, who was the judge in County Court at Law No. 3 at the
time of Gutierrez=s plea.[3]  In his affidavit, Judge Windle explained that
he did not specifically recall Gutierrez=s case
but that his common practice for conducting criminal pleas included having them
conducted on the record, informing the defendant of his Miranda rights
and advising the defendant strongly against self-representation, and ensuring
that an interpreter assisted the defendant if he did not speak English well. 

After hearing the remarks of counsel and
reviewing the file, including Gutierrez=s
application for writ of habeas corpus and the State=s
response, the trial court signed an order denying the requested relief.  Gutierrez now appeals from the denial of the
relief he requested in his post-conviction writ. 

III.  Standard of Review








A defendant convicted of a misdemeanor offense
may attack the validity of the conviction by way of habeas corpus if he is
either (1) confined or restrained as a result of a misdemeanor charge or
conviction, or (2) is no longer confined but is subject to collateral legal
consequences resulting from the conviction. 
See Tex. Const.
art. V, ' 8; Tex. Code Crim. Proc. Ann. arts. 11.09,
11.21, 11.22 (Vernon 2006); State v. Collazo, No. 01-06-01076-CR, 2007
WL 3227611, at *2 (Tex. App.CHouston
[1st Dist.] Nov. 1, 2007, pet. stricken). 
An applicant for a writ of habeas corpus bears the burden of proving his
allegations by a preponderance of the evidence. 
Ex parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995), cert.
denied, 518 U.S. 1021 (1996).








We generally review a trial court=s ruling
on a writ application for an abuse of discretion.  See Ex parte Mann, 34 S.W.3d 716, 718
(Tex. App.CFort Worth 2000, no pet.); see
also Ex parte Peralta, 87 S.W.3d 642, 645 (Tex. App.CSan
Antonio 2002, no pet.).  However, an
abuse of discretion review of a trial court=s
decision is not necessarily appropriate in the context of application of law to
facts when the decision does not turn on the credibility or demeanor of
witnesses.  Ex parte Martin, 6
S.W.3d 524, 526 (Tex. Crim. App. 1999); Ex parte Peralta, 87 S.W.3d at
645.  Instead, an appellate court must
conduct a de novo review when Athe
trial judge is not in an appreciably better position than the reviewing court
to make that determination.@  See Guzman v. State, 955 S.W.2d 85, 87
(Tex. Crim. App. 1997).  In this case,
because no testimony was taken at the habeas hearing and because the trial
judge who heard the habeas application did not preside at trial, we conduct a
de novo review.  See Ex parte Peralta,
87 S.W.3d at 645.

IV.  Gutierrez=s
Arguments

In his application for writ of habeas corpus,
Gutierrez contends that he was denied due process because he (1) received
faulty admonishments, (2) entered into a plea bargain prior to waiving his
right to an attorney, (3) entered into a plea bargain without an interpreter,
(4) was appointed an uncertified interpreter, and (5) invalidly waived his
right to an attorney.  Gutierrez=s
counsel boiled down his arguments at the hearing on the writ application by
saying, A[B]asically
I=m trying
to get the prior conviction voided, Your Honor, on the basis that he did not
have an attorney. . . . My argument is based upon two different legal
processes.  One being that the waiver of
counsel was given unknowingly.  And two,
. . . I have a due process argument.@ 








Gutierrez argues that he was not properly warned
or admonished regarding the Apitfalls,
dangers, and disadvantages of self[-]representation.@  A criminal defendant has a right to the
assistance of counsel in state court, guaranteed by the Sixth and Fourteenth
Amendments to the United States Constitution. 
See Gideon v. Wainwright, 372 U.S. 335, 343, 83 S. Ct. 792, 796
(1963).  Concomitant with the right to
counsel is the right to waive counsel and to represent one=s
self.  See Faretta v. California,
422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975). 
When a criminal defendant chooses to waive his right to counsel and
represent himself, the waiver should be made Aknowingly
and intelligently,@ and he should be warned of the Adangers
and disadvantages@ accompanying such waiver.  See id. at 835B36, 95
S. Ct. at 2541.  The Texas Court of
Criminal Appeals has determined that Faretta is triggered when a
defendant appears without an attorney to contest his guilt but is not triggered
when a defendant appears without an attorney to plead guilty or nolo
contendere.  Hatten v. State, 71
S.W.3d 332, 334 (Tex. Crim. App. 2002).








Here, Gutierrez did not contest his guilt,
therefore Athe issue is not whether the
trial court admonished the accused of the dangers and disadvantages of
self-representation [pursuant to Faretta], but rather whether there was
a knowing, voluntary, and intelligent waiver of counsel.@  See Johnson v. State, 614 S.W.2d 116,
119 (Tex. Crim. App. 1981).  Gutierrez
acknowledges the decision of the court of criminal appeals limiting the
application of Faretta in cases such as this.  We decline to revisit this issue and hold
that Johnson and its progeny are applicable to the case before us.  See Hatten, 71 S.W.3d at 334.  Because the requirements of Faretta are
not invoked by a misdemeanor defendant, like Gutierrez, who waives his right to
representation by counsel and does not contest his guilt, any admonishments
that the trial court gave concerning self-representation were more than
Gutierrez was entitled to receive under the law and could thus not have been Afaulty.@  What remains to be decided, however, is
whether the waiver of the right to counsel was knowing, intelligent, and
voluntary.  See id. 

If the defendant in a misdemeanor case where
guilt is not contested signs a written waiver of counsel in court and there is
no contradicting evidence or any evidence that the defendant was coerced or
intimidated, then the record is sufficient to support a finding that the
defendant=s waiver of counsel was
valid.  Hatten v. State, 89 S.W.3d
160, 163 (Tex. App.CTexarkana 2002, no pet.).

Here, Gutierrez hones in on the three motions for
continuance in making his argument that he entered into a plea without an
interpreter and before waiving his right to counsel.  Gutierrez takes issue with the fact that he
was first spoken to in English at the arraignment and that he was sent to talk
to the county attorney.  At the hearing
on the writ application, Gutierrez=s
attorney argued, 

The case was postponed I=m assuming to obtain an
interpreter.  When there was an interpreter,
they continued with that which had already taken place.  They had reached a plea agreement.  And then they proceed with the plea.  And so the defendant is at that time already
in the plea, got an agreement worked out with the county attorney.  

 








Gutierrez=s attorney insinuates that some
type of plea bargaining may have taken place during his initial meeting with
the prosecutor and argues that he should have been given the interpreter from
day one, prior to being sent to talk to the prosecutor. 

However, the record does not bear out Gutierrez=s
attorney=s
rendition of the proceedings.  The first
motion for continuance on its face reveals that the proceedings to develop a
plea were postponed until a date when an interpreter would be
available.  Moreover, as mentioned above,
the record in this case contains an affidavit from the Honorable Don Windle,
who was the judge in County Court at Law No. 3 at the time of Gutierrez=s
plea.  Judge Windle stated that he had no
independent recollection of this specific case and then explained his usual
habit, custom, and practice regarding taking pleas:

AIn my court[,] criminal
pleas were conducted on the record, although such practice was not required nor
was it regularly done by other misdemeanor courts in Denton County, Texas.  I have contacted the court reporter, Dawn
Nixon, who served in my court on the date of Mr. Gutierrez=[s] plea in an attempt to
obtain the record at issue in this case. 
Although she no longer works as a court reporter, she advised that she
still has some records in her possession. 
However, after searching her records, Dawn reported that she was not
able to locate the record at issue in this case.

 








AMy normal custom and
practice during a plea from a pro se defendant was to[]  (a) be certain that the defendant was advised
of his Miranda rights[,] (b) advise him strongly against representing
himself[,] (c) notify him that he will be at a material disadvantage in doing
so[,] (d) remind him that he is not familiar with the legal system and the
prosecutor will be[,] and (e) inform him that he will be held to the same
standard as an attorney.  I did not
utilize a Ascript@ or other checklist but
followed an established routine.

 

AIf I was handling a plea
from an individual who did not speak English, or speak English well, it was my
routine practice to ensure that an interpreter or person who could assist the
Defendant by speaking the Defendant=s first language was provided, although doing so
was not required.  Furthermore, when
using an interpreter, I would make a special effort in explaining the dangers
of pro se representation to the defendant by making as certain as possible that
the admonishments were repeated to him or her in the Defendant=s language as accurately
as I could ascertain.

 

APlea
bargains in my court moved slower than those in other misdemeanor courts in
Denton County, Texas, during that time period because the pleas in my court
were on the record and I was very systematic regarding pleas.  It was my practice to use the procedures
generally associated with a felony plea for misdemeanor pleas.@ 

In addition to Judge Windle=s
affidavit, the record contains a document entitled AWaivers,@ in
which Gutierrez waived his right to counsel and his right to a trial by jury
and applied for probation.  This document
is signed by both Gutierrez and Judge Windle. 









The record also contains admonishments signed by
Gutierrez, Jacoby, and Judge Windle and states, AI have
read these admonishments prior to entering my plea.  I have read and reviewed a copy of the
judgment . . . .@ 
The judgment states, A[T]he
Court found that [Gutierrez] knowingly, intelligently, and voluntarily waived
[his] right to representation by counsel and right to trial by jury, and thereafter,
[he] entered a plea . . . .@ 

The general rule is that a guilty plea is
voluntary if the defendant was made fully aware of the direct consequences of
his plea.  State v. Jimenez, 987
S.W.2d 886, 888 (Tex. Crim. App. 1999). 
Pursuant to article 26.13(a) of the Texas Code of Criminal Procedure,
before accepting a guilty plea, the trial court must admonish the defendant,
orally or in writing, of the range of punishment, the possibility of
deportation, and the fact that the defendant will be required to register as a
sex offender, if applicable.  See Tex. Code Crim. Proc. Ann. art.
26.13(a) (Vernon Supp. 2007).  When the
record reflects that a defendant was properly admonished, it presents a prima
facie showing that the guilty plea was knowing and voluntary.  Martinez v. State, 981 S.W.2d 195, 197
(Tex. Crim. App. 1998); Jackson v. State, 139 S.W.3d 7, 14 (Tex. App.CFort
Worth 2004, pet. ref=d).  The burden then shifts to the defendant to
establish that, notwithstanding the statutory admonishments, he did not
understand the consequences of his plea. 
Martinez, 981 S.W.2d at 197; Jackson, 139 S.W.3d at
14.  An appellant=s
ignorance of a collateral consequence does not render the plea
involuntary.  Jimenez, 987 S.W.2d
at 888B89.








Our review of the evidence demonstrates that the
admonishments signed by Gutierrez, Jacoby, and Judge Windle informed Gutierrez
that the maximum range of punishment was two years=
confinement and a $2,000 fine and that the minimum range of punishment was
seventy-two hours in jail and a $100 fine; that the court was not obligated to
follow the plea bargain agreement; that there was a possibility of deportation;
and that he could not appeal without the trial court=s
permission.  The record thus reflects
that Gutierrez was properly admonished pursuant to article 26.13 and presents a
prima facie showing that his guilty plea was knowing and voluntary.  Martinez, 981 S.W.2d at 197; Jackson,
139 S.W.3d at 14.  

Although Gutierrez contends that he only signed
the documents because he was told that he would not go to jail and that he
thought this would be like Mexico where money can be paid to avoid going to
jail, the record reveals that he signed his name on the admonishments that
specifically listed jail time and which included the statement, AI
understand my sentence and will comply with the Court=s order.@  Moreover, any attempt by Gutierrez to claim
that he was not admonished that his 1993 DWI conviction could be used to
enhance future DWI convictions to a felony does not render his plea
involuntary.  See Jimenez, 987
S.W.2d at 888B89.








The record contains no evidence that Gutierrez
was coerced or intimidated.  Although the
record reflects that GutierrezCwith the
help of an interpreter on March 29, 1992Cmay have
negotiated a plea with the prosecutor, the record also reflects that the trial
court=s
standard procedure would not have allowed it to accept Gutierrez=s plea
until he (1) had the assistance of a court-provided interpreter and (2) had
signed the waivers and admonishments. 
Additionally, Gutierrez=s
counsel conceded at the hearing on the writ application that a certified
interpreter was not required at the time Gutierrez gave his plea.  See generally Act of May 21, 1991, 72d
Leg., R.S., ch. 700, ' 1, 1991 Tex. Gen. Laws 2505,
2505 (amended 2005) (current version at Tex.
Code Crim. Proc. Ann. art. 38.30 (Vernon Supp. 2007)); see also Tex. Gov't Code Ann. ' 57.002(a)
(Vernon Supp. 2007) (requiring that A[a]
court shall appoint a certified court interpreter or a licensed court
interpreter if a motion for the appointment of an interpreter is filed by a
party or requested by a witness in a civil or criminal proceeding in the court@).  But see Ex parte Hernandez, No.
02-06-00290-CR, 2007 WL 1502028, at *2 (Tex. App.CFort
Worth May 24, 2007, no pet.) (mem. op.) (not designated for publication)
(stating that when record is devoid of any request for interpreter and does not
demonstrate that defendant cannot understand the proceedings, defendant waives
right to complain of trial court=s
failure to appoint an interpreter). 
Thus, we hold that the record is sufficient to support a finding that
Gutierrez=s waiver of counsel was valid
because he waived his right to counsel after meeting with an interpreter who
assisted with negotiating his plea.  See
id.








Moreover, Gutierrez relies on the combined effect
of his allegations to set up his due process argument.  However, because we have held that no
admonishments on self-representation were required, that Gutierrez was properly
admonished under article 26.13, that Gutierrez=s waiver
of his right to counsel was valid, and that a certified interpreter was not
required, Gutierrez=s due process argument
fails.  We therefore hold that Gutierrez=s right
to due process was not violated during his prior DWI pretrial and plea
proceedings.

V.  Conclusion

Because we hold that the record is sufficient to
support the trial court=s denial of habeas corpus relief
to Gutierrez on the grounds asserted by Guiterrez in his petition for writ of
habeas corpus, we affirm the order denying habeas corpus relief.

 

SUE
WALKER

JUSTICE

 

PANEL F:    GARDNER,
WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: June 5, 2008











[1]See Tex. R. App. P. 47.4.





[2]We rely on Gutierrez=s Application for Writ of Habeas
Corpus, along with the record from the hearing on that application, because we
did not request appellate briefing.  See
Tex. R. App. P. 31.1.





[3]Judge Windle currently
presides over the Denton County Probate Court.