In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00145-CV


______________________________





IN THE MATTER OF C.D.H., A JUVENILE





 


On Appeal from the County Court at Law


Cass County, Texas


Trial Court No. 07-J-015




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 C.D.H., a juvenile, waived his right to a jury trial, and the trial court found that C.D.H.
engaged in delinquent conduct. The trial court then committed C.D.H. to the Texas Youth
Commission (TYC) for an indeterminate sentence not to exceed his nineteenth birthday. 

I. Background

 Three boys, one of which was C.D.H., approached two younger boys walking in Atlanta,
Texas. C.D.H. held a toy gun to the head of one of the boys and demanded money and a lighter. The
younger boy, not knowing that the gun was a toy gun, threw some change and the lighter toward
C.D.H. C.D.H. hit one of the younger boys in the face, and the two younger boys ran away.

 Based on this conduct, the State filed its petition alleging delinquent conduct. Prior to the
beginning of the adjudication proceeding and after explaining the allegations against C.D.H., the trial
court admonished C.D.H. of the nature of the proceedings and the possible range of punishment:

 Okay. The nature of this proceeding is to determine whether or not you are a juvenile
who has engaged in delinquent conduct. A possible consequence of this proceeding
is that you could be committed to the Texas Youth Commission where they're
authorized by law to keep you until your eighteenth birthday.


C.D.H.'s trial counsel did not object to this admonition.

 After hearing testimony, the trial court found that C.D.H. did engage in delinquent conduct
by committing the felony offense of robbery in violation of Section 29.02 of the Texas Penal Code
and the misdemeanor offense of assault in violation of Section 22.01(a)(1) of the Texas Penal Code. 
See Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2008), § 29.02 (Vernon 2003). The trial
court then sentenced C.D.H. to an indeterminate sentence in the custody of the TYC not to exceed
his nineteenth birthday. (1) No objection was made when the trial court pronounced its disposition. 

 C.D.H. contends that he has a fundamental right to be sentenced in accordance with the trial
court's admonishment. Disposition that does not mirror the admonition, then, runs afoul of his
federal and state constitutional rights to due process and due course of law. The record clearly
establishes that trial counsel lodged no objection to the trial court's admonition or disposition. 
C.D.H., then, is forced to address the issue of preservation of error and convince this Court that the
error of which he complains is properly before this Court. First, he argues, the error is structural or
systemic in nature, making it immune from preservation and harm analysis requirements. 
Alternatively, he contends the error is fundamental error to which no objection is necessary. We
conclude the error alleged is neither and, therefore, was not preserved for our review.

II. Not Structural or Systemic Defect

 The United States Supreme Court has mandated that certain federal constitutional errors
labeled as "structural" are not subject to a harmless error analysis. See United States v.
Gonzalez-Lopez, 548 U.S. 140, 150 (2006) (erroneous deprivation of right to counsel of choice is
structural error because it has ''necessarily unquantifiable and indeterminate" consequences); 
Sullivan v. Louisiana, 508 U.S. 275 (1993) (improper jury instruction on proof beyond reasonable
doubt not susceptible to harmless error analysis); Garrett v. State, 220 S.W.3d 926, 931 (Tex. Crim.
App. 2007); Johnson v. State, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005) (discussing types of
errors held to be structural by United States Supreme Court); see also Cain v. State, 947 S.W.2d 262,
264 n.5 (Tex. Crim. App. 1997); Matchett v. State, 941 S.W.2d 922, 927 (Tex. Crim. App. 1996). 
Except for those certain federal constitutional errors so labeled, no error, whether it relates to
jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune
to a harmless error analysis. Cain, 947 S.W.2d at 264. Harmless error analysis does not apply to
a constitutional error that constitutes a ''structural defect'' in the trial process.

 Simply put, we find no authority that would suggest that error associated with a right to be
sentenced in accordance with the trial court's admonishment required by Section 54.03(b) of the
Texas Family Code is the type of error that can be characterized as a structural or systemic defect
such that it would escape harmless error analysis. Tex. Fam. Code Ann. § 54.03(b) (Vernon Supp.
2008). 

III. Not Fundamental Error

 Further, the error alleged here (2) is not immune from the requirement that it be preserved for
our review. The Texas Court of Criminal Appeals (3) has consistently held that the failure to object
in a timely and specific manner during trial forfeits complaints about the admissibility of evidence,
even when the error may concern a defendant's constitutional rights. See Saldano v. State, 70
S.W.3d 873, 889 (Tex. Crim. App. 2002). All but the most fundamental rights may be forfeited if
not insisted upon by the party to whom they belong. See Saldano, 70 S.W.3d at 887. An exception
applies to two "relatively small" categories of errors: (1) violations of waivable-only rights; and
(2) denials of absolute, systemic requirements. See Aldrich v. State, 104 S.W.3d 890, 895 (Tex.
Crim. App. 2003); Saldano, 70 S.W.3d at 888.

 Examples of rights that are waivable only include the right to the assistance of counsel, the
right to trial by jury, and a right of appointed counsel to have ten days of trial preparation that a
statute specifically made waivable only. Aldrich, 104 S.W.3d at 895. A waivable-only right cannot
be forfeited by a party's inaction alone; a defendant must take affirmative action to waive such a
right. See Bessey v. State, 239 S.W.3d 809, 812 (Tex. Crim. App. 2007).

 In Bessey, the Texas Court of Criminal Appeals held that a proper admonishment in an adult
guilty plea was waivable only because the court has a statutory duty to properly admonish defendants
as described by Article 26.13. "A law that puts a duty on the trial court to act sua sponte, creates a
right that is waivable only. It cannot be a law that is forfeited by a party's inaction." Id. (quoting
Mendez, 138 S.W.3d at 343). Thus, a court's failure to properly admonish a defendant cannot be
forfeited and may be raised for the first time on appeal unless it is expressly waived. By contrast,
the statute requiring the trial court to explain the "possible consequences of the proceedings" in a
juvenile adjudication hearing explicitly requires preservation of any failure of the trial court to
provide the proper explanation. 

 While no precise rule has been announced for determining if a right is waivable only instead
of forfeitable, it is important to be reminded of the reasons for requiring preservation of errors. 
"Stated more broadly, objections promote the prevention and correction of errors. When valid
objections are timely made and sustained, the parties may have a lawful trial." Saldano, 70 S.W.3d
at 887. Here, if the trial court had been apprised of the misstatement of the law, the court could have
promptly corrected it and cured any error. There is no evidence that the trial itself or the decision
of the trial court was influenced in any manner by the trial court's misstatement. Further, the
omission does not directly or adversely affect the interests of the public generally or bring disrespect
to the judicial process. See Dix and Dawson, Texas Practice: Criminal Practice and Procedure
§ 42.252 (2d ed. 2001). We find that, if there is a right to be sentenced to the range of punishment
previously announced by the trial court in a juvenile proceeding, it is not a right that is waivable
only, but may be forfeited. 

 Absolute, systemic requirements include jurisdiction of the person, jurisdiction of the subject
matter, and a penal statute's being in compliance with the "separation of powers" section of the state
constitution. See Aldrich, 104 S.W.3d at 895. As discussed previously, there is simply no authority
that would suggest that the type of error alleged here is in the nature of a systemic defect. The error
alleged here, even though framed in terms of constitutional terms, does not fall within the exceptions
that would excuse failure to lodge an objection in the trial court. It must have been raised in the trial
court to preserve the issue for our review. (4)

 Even if we were to conclude that this error need not be preserved for our review, C.D.H.'s
contention would fail in that he must, but cannot show harm from, the alleged error. C.D.H. pled
not guilty, and the record does not show that C.D.H. suffered harm as a result of the trial court's
initial misstatement of the range of punishment and subsequent sentencing that might go beyond the
range initially pronounced. (5) The record would not demonstrate harm resulting from the error
alleged.

IV. Conclusion

 The error alleged here was not preserved for our review and is not the type of error that is
immune to preservation requirements. We are left then with the general rule regarding preservation
of error: a party waives error unless the party preserves error for appeal by objecting in the trial
court. See Tex. R. App. P. 33.1. Applying that general rule, the absence of an objection, either at
the time of the admonishment or at the time the indeterminate sentence was pronounced, leads us
to conclude that the alleged error is not before this Court. We, therefore, overrule C.D.H.'s
contention and affirm the adjudication and disposition of the trial court.




 Jack Carter

 Justice


Date Submitted: October 8, 2008

Date Decided: December 16, 2008


1. When a juvenile court imposes an indeterminate sentence, it may only commit the child to
the custody of the TYC, and the TYC must release the child no later than his or her nineteenth
birthday. Tex. Fam. Code Ann. § 54.04(d)(2) (Vernon Supp. 2008); Tex. Hum. Res. Code Ann.
§ 61.084(e) (Vernon Supp. 2008). When the trial court imposes an indeterminate sentence for a
child who committed aggravated assault, the term of confinement in a TYC residential facility ranges
from twelve months to the child's nineteenth birthday. Tex. Hum. Res. Code Ann. § 61.084(e);
37 Tex. Admin. Code § 85.23(d)(3) (2008) (Tex. Youth Comm'n, Classification); 37 Tex. Admin.
Code § 85.25(d)(3) (2008) (Tex. Youth Comm'n, Classification, Minimum Length of Stay).
2. The Texas Family Code requires the judge to explain to the child certain information at the
beginning of an adjudication hearing. Tex. Fam. Code Ann. § 54.03(b). One of the requirements
is the judge is to explain the "nature and possible consequences of the proceedings." Id. C.D.H.
does not rely on Section 54.03, but makes only a constitutional argument. At one time, the failure
to give the explanations in Section 54.03 did not have to be preserved for appeal by an objection, but
later section (i) was added requiring preservation. Tex. Fam. Code Ann. § 54.03(i) (Vernon Supp.
2008). The Houston-First Court has read Section 54.03(i) as applicable only to omitted (as opposed
to erroneous) admonishments, relying on the rule prior to the enactment of Section 54.03(i) that no
objection was required to preserve error regarding the omission of the required juvenile
admonishments. See In re T.W.C., 258 S.W.3d 218, 221 (Tex. App.--Houston [1st Dist.] 2008, no
pet.) (citing In re C.O.S., 988 S.W.2d 760, 767 (Tex. 1999)). But see In re L.A.S., 981 S.W.2d 691,
692 (Tex. App.--Houston [1st Dist.] 1998, no pet.) (concluding that, even if Section 54.03(b)
admonishment were inadequate, any error associated with the admonishment was not preserved as
required by Section 54.03(i)). C.D.H. does not address the error as one related to Section 54.03(b). 
3. Juvenile proceedings are civil in nature. Tex. Fam. Code Ann. § 51.13 (Vernon Supp.
2008). Despite the civil nature of juvenile proceedings, the Texas Supreme Court has recognized
a juvenile's right to the essentials of due process and fair treatment. In re B.P.H., 83 S.W.3d 400,
405 (Tex. App.--Fort Worth 2002, no pet.). The Texas Supreme Court looks to authority from the
Texas Court of Criminal Appeals for guidance on issues of preservation of error. See In re C.O.S.,
988 S.W.2d 760 (Tex. 1999); In re D.I.B., 988 S.W.2d 753 (Tex. 1999). Again, prior to the
enactment of Section 54.03(i), error associated with the trial court's failure to provide required
admonishments was treated as fundamental error to which no objection was required. We note that
the error alleged here is characterized differently and was not briefed in terms of Section 54.03. 
4. Consistent with our conclusion in the instant case, this Court has concluded that, within the
context of juvenile probation revocation hearings, a due process complaint must have been raised
before the trial court to preserve the error for appellate review. See In re J.L.D., 74 S.W.3d 166, 169
(Tex. App.--Texarkana 2002, no pet.). 
5. Looking again at the closely related issue of failure to warn in strict compliance with a
Section 54.03(b) admonishment, the Texas Supreme Court explained that error associated with
Section 54.03 was not the type of error that defied analysis:


 Nor is the "data . . . insufficient" to conduct a meaningful analysis of harm in this
case. D.I.B. pleaded "not true" to the allegations against her; she presented a defense;
and she was found to be a delinquent. There is no indication that, had D.I.B. known
of the potential uses of the record of an adjudication in juvenile court, she would
have been able to avoid an adjudication of delinquency. Nor is there any evidence
that she was offered and would have accepted an agreement to plead to an offense
other than murder as the basis for her adjudication. Absent a showing that the trial
court's failure to give the required explanation may have affected the adjudication or
the basis for it, the error was harmless.


D.I.B., 988 S.W.2d at 759. The court further explained that harm may be shown by proof that the
juvenile could and would have entered into a plea agreement with the State based on a lesser offense
if he or she had been properly admonished. C.O.S., 988 S.W.2d at 768. Such considerations lend
themselves to harm analysis of the error alleged here. 


1985 1073750139 0 0 159 0;}
@font-face
 {font-family:Tahoma;
 panose-1:2 11 6 4 3 5 4 4 2 4;
 mso-font-charset:0;
 mso-generic-font-family:swiss;
 mso-font-pitch:variable;
 mso-font-signature:1627400839 -2147483648 8 0 66047 0;}
 /* Style Definitions */
 p.MsoNormal, li.MsoNormal, div.MsoNormal
 {mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpFirst, li.MsoFootnoteTextCxSpFirst, div.MsoFootnoteTextCxSpFirst
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpMiddle, li.MsoFootnoteTextCxSpMiddle, div.MsoFootnoteTextCxSpMiddle
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpLast, li.MsoFootnoteTextCxSpLast, div.MsoFootnoteTextCxSpLast
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 color:blue;
 mso-themecolor:hyperlink;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-076-CR%20Jones%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00076-CR

                                                ______________________________

 

 

                                 WILLIAM MARBIE JONES,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 124th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 38,331-B

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            William
Marbie Jones was convicted by a jury for the felony offense of driving while
intoxicated (DWI), 3rd or more.  Jones
punishment was enhanced to that of a second-degree felony, and he was sentenced
to twenty years imprisonment.  In a
single point of error, Jones appeals his conviction on the ground that counsel
rendered ineffective assistance for failing to investigate the validity of a
Marion County DWI conviction.  We affirm
the trial courts judgment. 

I.          Standard of Review 

            We
begin our analysis with the rule that any allegation of ineffectiveness of
counsel must be firmly founded in the record.  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); Wallace v. State, 75 S.W.3d 576, 589 (Tex.
App.Texarkana 2002), affd, 106
S.W.3d 103 (Tex. Crim. App. 2003).  From
the record received by this Court, Jones bears the burden of proving that
counsel was ineffective by a preponderance of the evidence.  Goodspeed,
187 S.W.3d at 392; Thompson, 9 S.W.3d
at 813; Cannon v. State, 668 S.W.2d
401, 403 (Tex. Crim. App. 1984).

            We
apply the two-pronged Strickland test
handed down by the United States Supreme Court to determine whether Jones
received ineffective assistance of counsel.  Strickland
v. Washington, 466 U.S. 668 (1984). 
Failure to satisfy either prong of the Strickland test is fatal.  Ex parte Martinez, 195 S.W.3d 713, 730
n.14 (Tex. Crim. App. 2006).  Thus, we
need not examine both Strickland prongs
if one cannot be met.  Strickland, 466 U.S. at 697.

            First,
Jones must show that counsels performance fell below an objective standard of
reasonableness in light of prevailing professional norms.  Id.
at 68788.  There is a strong presumption
that counsels conduct fell within the wide range of reasonable professional
assistance and that the challenged action could be considered sound trial
strategy.  Id. at 689; Ex parte
White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  Therefore, we will not second-guess the
strategy of Jones counsel at trial through hindsight.  Blott
v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex. App.Texarkana 2005, pet.
refd).

            The
second Strickland prejudice prong
requires a showing that but for counsels unprofessional error, there is a
reasonable probability that the result of the proceeding would have been
different.  Strickland, 466 U.S. at 68788. 


II.        Claim of Ineffective
Assistance of Counsel  

            A
first offense DWI is a class B misdemeanor.  See Tex.
Penal Code Ann. § 49.04(b) (Vernon 2003).  In contrast with a first offense DWI, it
becomes a third-degree felony when the State proves the person has previously
been convicted . . . two times of any other offense relating to the operating
of a motor vehicle while intoxicated . . . . See Tex. Penal Code Ann.
§ 49.09(b)(2) (Vernon Supp. 2010). 
The States indictment alleged that Jones had been previously convicted
of DWI in cause number 3806 in the 276th District Court of Marion County,
Texas, in cause number 97-612 in the County Court at Law of Harrison County,
Texas and in cause number 2001-C-137 in the County Court at Law of Panola
County, Texas.  Although Jones pled true
to the Marion County and Panola County DWI convictions, he did this without
mentioning the Harrison County conviction. 


            It
should be pointed out that the elevation of a DWI from a misdemeanor to a
felony offense by using previous DWI convictions does not enhance punishment,
but creates an entirely different offense that vests the trial court with
jurisdiction.  See Harris v. State, 204 S.W.3d 19, 2728 (Tex. App.Houston [14th
Dist.] 2006, pet. refd); Perez v. State,
124 S.W.3d 214, 216 (Tex. App.Fort Worth 2002, no pet.); Carroll v. State, 51 S.W.3d 797, 80001 (Tex. App.Houston [1st
Dist.] 2001, pet. refd).  On a showing
of any two of the three of the above alleged convictions, the instant offense
would be a third-degree felony, punishable by a term of two years to ten years
imprisonment.  See Tex. Penal Code Ann.
§ 12.34 (Vernon Supp. 2010), § 49.09(b). 
In addition to prosecution of the instant offense as a felony, the State
also soughtpursuant to Tex. Penal Code
Ann. § 12.42(a)(2) (Vernon Supp. 2010)to enhance the punishment range
for this offense from that of a third-degree felony to that of a second-degree
felony by alleging a previous conviction of the felony offense of DWI in
cause number 2005-C-0151 in the 123rd District Court of Panola County, Texas.  Due to this previous felony conviction, Jones
punishment was enhanced to that of a second-degree felony, and he was sentenced
to twenty years imprisonment. 

            Jones
complains that the Marion County judgment of conviction was invalid and that he
received ineffective assistance of counsel because no challenge was made to the
validity of that prior conviction.  Jones
also maintains that the validity of the judgment can be raised at this time
because the State relied on it as a predicate to giving the trial court
jurisdiction of the instant case as a felony. 
In examining Marion County cause number 3806, we note that Jones pled
guilty to DWI and was sentenced to community supervision.  Jones rests his challenge to the validity of
the Marion County case on the allegation that Jones was not represented by
counsel when he entered a guilty plea to the charges in that case.  

            The
record in the Marion County case is somewhat contradictory.  Some of the records in it reflect that Jones
was represented by counsel during the proceeding, and the final judgment entered
after Jones written plea contains counsels name.  Contrarily, although the written waiver in
that case recites [t]hat my attorney has [advised] me of the consequences of a
plea of guilty, the same document contains the word waived in the signature
line for Jones counsel.  Despite what
was written on the waiver, the written plea states that Jones pled guilty to
the Marion County offense in open Court, joined by his attorney with whom he
has previously consulted.  No record of
the proceedings in open court or testimony from Jones counsel in the Marion
County case was presented to us.  

            In
any event, Jones counsel submitted an affidavit containing the following:

            As
part of my trial strategy, I advised Mr. Jones stipulate that he had twice
before been convicted of DWI so that we could minimize the evidence placed
before the jury about Mr. Jones[] prior DWI convictions.  At the time, I had reviewed the discovery,
which include the copies of each DWI conviction on Mr. Jones[] record.  Everything appeared to be in order and I did
not perceive any problem the State would have proving any of the
convictions.  I did not obtain a copy of
the entire file on any of the underlying convictions or review the clerks file
of any of the convictions but relied on what the District Attorneys Office
provided.

 

            .
. . . The Marion County conviction was used as a jurisdictional element for
this conviction and also the felony conviction that was used to enhance his
punishment to that of a second degree.

 

            Mr.
Cassel provided me with a certified copy of the entire file from the Marion
County conviction . . . . 

 

            There
is no written waiver or warning of Mr. Jones right to counsel contained in the
entire Marion County file though it appears R. Daryl Bennett represented Mr.
Jones.  There is no Motion to Withdraw
either.  Thus, it would appear that Mr.
Jones[] plea was obtained without his lawyer and without a proper waiver of
his right to counsel or warning of proceeding pro se.  Accordingly, had I
known these issues existed, I would have filed a motion to quash the indictment
or otherwise challenged the ability of the State to prove the jurisdictional
DWI convictions because [the] Marion County conviction would be
constitutionally infirm.  

 

            On
the assumption (based upon an incomplete record of the Marion County cause)
that Jones waived his right to counsel involuntarily and without proper
admonishments and that this ground could be used to render a final judgment
void without preservation of such a point of error because it was relied on to
give the trial court in this case jurisdiction of the third-degree felony
offense, Jones argues his counsel was ineffective for failing to investigate
whether the Marion County conviction was invalid. 

            Although,
in the face of contrary evidence in the record which contradicts the
conclusion, we doubt that simply the inclusion of the word waived in the
space for Jones counsels signature on the waiver form is sufficient to
affirmatively show that he waived his right to counsel involuntarily and
without proper admonishments (thus rendering the Marion County conviction
invalid for these purposes),[1]
we will examine as if it did.  In other
words, we will assume for the purpose of argument that Jones has met the first
prong of the Strickland test.  Be that as it may, even making the assumption
under that premise that Jones could meet the first Strickland prong, the second Strickland
prong certainly cannot be met.  

            In
order to establish jurisdiction as a felony, the State was only required to
prove the existence of two prior convictions for offenses relating to operating
a motor vehicle while intoxicated for jurisdictional purposes.  Jones stipulated to the Panola County
conviction, cause number 2001-C-137.  A
stipulation is a kind of judicial admission such that a defendant will not be
heard to question the stipulated fact on appeal.  Bryant
v. State, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005).  This established the first jurisdictional
offense.  In addition to the Panola
County misdemeanor offense, the record contains a written plea of guilt signed
by Jones and final judgment of conviction in cause number 97-612 in the County
Court at Law of Harrison County, Texas.  This established the second jurisdictional
offense.  As a consequence, even if Jones
had successfully contested the validity of the Marion County conviction, there
would still have been the requisite two convictions (i.e., the Panola County
case and the Harrison County case) to establish this case as a third-degree
felony.  Therefore, Jones would not be
able to demonstrate harm such that the result of the proceedings would have
been different.  

III.       Conclusion


            We affirm the trial courts
judgment. 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          November 2, 2010

Date Decided:             December 15, 2010

 

Do Not Publish











[1]If
the defendant in a misdemeanor case where guilt is not contested signs a
written waiver of counsel in court and there is no contradicting evidence or
any evidence that the defendant was coerced or intimidated, then the record is
sufficient to support a finding that the defendants waiver of counsel was valid.
 Hatten
v. State, 89 S.W.3d 160, 163 (Tex. App.Texarkana 2002, no pet.).  The Marion County case was a
misdemeanor.